JUDGE GARNETT

26 CV 00683

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Krystyna Menkova
_____
Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been assigned)

-against-

Do you want a jury trial?

☒ Yes    ☐ No

_____

_____
Citibank, N.A.
_____
Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

# EMPLOYMENT DISCRIMINATION COMPLAINT

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

2026 JAN 27 PM 12: 40

SDNY PRO SE OFFICE
RECEIVED

Rev. 3/24/17

## I.    PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

Krystyna                                    Menkova
First Name              Middle Initial      Last Name

1845 82nd street, apt B4
Street Address

Kings, Brooklyn                  NY               11214
County, City                     State            Zip Code

3476803518                       krystyna.menkova@gmail.com
Telephone Number                 Email Address (if available)

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:    Citibank, N.A.
                Name
                3800 Citigroup Center Drive
                Address where defendant may be served
                Hillsborough, Tampa          FL               33610
                County, City                 State            Zip Code

Defendant 2:    _____

                Name

                _____

                Address where defendant may be served

                _____

                County, City                 State            Zip Code

Address where defendant may be served

County, City                     State                Zip Code

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

Citibank Headquaters

Name

388 Greenwich Street

Address

New York                          NY                  10013

County, City                     State                Zip Code

## III.   CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐ race: _____

☐ color: _____

☐ religion: _____

☐ sex: _____

☐ national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

3

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☒ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☒ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☐ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.    STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☒ terminated my employment
- ☐ did not promote me
- ☒ did not accommodate my disability
- ☐ provided me with terms and conditions of employment different from those of similar employees
- ☒ retaliated against me
- ☒ harassed me or created a hostile work environment
- ☐ other (specify): _____

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

Detailed facts statement provided in attatched EXIBIT A (FACT STATEMENT)

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

Page 5

## V.   ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☒   Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?   01/15/2025

☐   No

Have you received a Notice of Right to Sue from the EEOC?

☒   Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?   12/02/2025

When did you receive the Notice?   12/03/2025

☐   No

## VI.   RELIEF

The relief I want the court to order is (check only those that apply):

☐   direct the defendant to hire me

☐   direct the defendant to re-employ me

☐   direct the defendant to promote me

☐   direct the defendant to reasonably accommodate my religion

☐   direct the defendant to reasonably accommodate my disability

☒   direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

See Exhibit D attached hereto for complete statement of requested relief.

Page 6

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | | |
|---|---|---|
| 01/24/26 | | |
| Dated | | Plaintiff's Signature |
| Krystyna | | Menkova |
| First Name | Middle Initial | Last Name |
| 1845 82nd street, apt B4 | | |
| Street Address | | |
| Kings, Brooklyn | NY | 11214 |
| County, City | State | Zip Code |
| 3476803518 | | krystyna.menkova@gmail.com |
| Telephone Number | | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

EXIBIT A

## STATEMENT OF FACTS

### I. BACKGROUND AND EMPLOYMENT HISTORY

1. On August 1, 2022, Defendant Citibank, N.A. ("Defendant" or "Citibank") hired Plaintiff as a Lead Data Analyst with a hybrid work arrangement at its offices located at 388 Greenwich Street, New York, New York 10013.

2. From August 1, 2022, through December 2023—a period of approximately seventeen (17) months—Plaintiff performed her duties without incident and received no complaints, counseling, or disciplinary action regarding her work performance.

3. During this period, Plaintiff's immediate supervisor, Siddhartha Banik Sankar ("Mr. Sankar"), provided Plaintiff with positive performance evaluations and recognized her professional achievements.

### II. PLAINTIFF'S DISABILITIES AND REASONABLE ACCOMMODATIONS

4. In or around October 2023, Plaintiff disclosed to Defendant that she suffered from a chronic back condition that substantially limited her ability to sit for prolonged periods during work hours.

5. Upon information and belief, Defendant determined that Plaintiff qualified as an individual with a disability under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA").

6. In January 2024 Defendant granted Plaintiff reasonable accommodations under the ADA, specifically authorizing her to work from home without the requirement of regular in-office attendance.

7. These accommodations remained in effect throughout the remainder of Plaintiff's employment with Defendant.

### III. FIRST FMLA LEAVE AND IMMEDIATE RETALIATION

8. In early 2024, Plaintiff began experiencing severe mental health conditions, including major depressive disorder and generalized anxiety disorder, which substantially impaired her ability to perform her work duties.

9. From February 12, 2024, through March 11, 2024, Plaintiff took leave pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), and Defendant's short-term disability program.

10. Upon her return to work in mid-March 2024, Plaintiff resumed her duties under her previously approved ADA accommodations.

## A. Hostile Treatment Upon Return from Protected Leave

11. Prior to Plaintiff's FMLA leave in February 2024, Mr. Sankar had consistently praised Plaintiff's work performance and professional achievements.

12. Upon Plaintiff's return from protected FMLA leave in March 2024, Mr. Sankar's demeanor and treatment of Plaintiff changed drastically and without legitimate explanation.

13. Mr. Sankar summoned Plaintiff to the main office location at 388 Greenwich Street, New York, New York 10013, for a meeting.

14. During this meeting, Mr. Sankar exhibited a hostile and aggressive attitude toward Plaintiff, including but not limited to: a. Making threats of termination; b. Falsely claiming that Plaintiff's performance was deficient; c. Personally attacking Plaintiff's professionalism; and d. Failing to provide any specific, legitimate basis for his assertions of poor performance.

15. The temporal proximity between Plaintiff's return from FMLA leave and Mr. Sankar's sudden change in behavior—occurring within days—establishes a clear causal connection between Plaintiff's exercise of protected rights and Defendant's retaliatory conduct.

## IV. DISCRIMINATION IN PERFORMANCE EVALUATIONS

## A. Mid-Year Review – July 2024

16. On or about July 2024, Mr. Sankar prepared and submitted Plaintiff's mid-year performance evaluation through Defendant's Workday performance management system.

17. In this evaluation, Mr. Sankar explicitly referenced Plaintiff's FMLA-protected leave as a basis for negative performance ratings.

18. Specifically, Mr. Sankar wrote: "During the first half, she has taken time offs without properly planning project transitions, risking the completion of critical deliveries."

19. This statement directly and impermissibly penalized Plaintiff for exercising her rights under the FMLA.

20. The reference to "time offs" encompasses Plaintiff's FMLA leave from February 12, 2024, through March 11, 2024, which was approved leave for a serious health condition. At the time of this mid-year review, Plaintiff had taken only two significant absences: (1) the protected FMLA leave, and (2) routine personal time off. The plural reference to "time offs" and the criticism of their impact on project deliveries directly targeted Plaintiff's FMLA-protected absence."

21. Federal law expressly prohibits employers from using an employee's FMLA leave as a negative factor in employment decisions, including performance evaluations. 29 C.F.R. § 825.220(c).

## B. Escalation to Management Without Remedial Action

22. Upon receiving the discriminatory mid-year evaluation, Plaintiff promptly escalated her concerns to her Director, Sami Huovilainen ("Mr. Huovilainen").

23. Despite being informed of Mr. Sankar's discriminatory conduct, Mr. Huovilainen failed to take any corrective action.

24. Plaintiff also reported the discrimination to Defendant's Human Resources and Ethics Department.

25. Defendant's Ethics Department initiated an investigation into Mr. Sankar's conduct.

12

26. Upon information and belief, Mr. Sankar was notified that he was the subject of an ethics investigation based on Plaintiff's discrimination complaint.

## C. Year-End Review – December 2024

27. In or around December 2024, following Plaintiff's filing of an internal ethics complaint, Mr. Sankar prepared and submitted Plaintiff's year-end performance evaluation.

28. In this evaluation, Mr. Sankar assigned Plaintiff the lowest possible rating of "4" across all performance categories.

29. Under Defendant's policies, a rating of "4" designates unsatisfactory performance and typically results in termination.

30. This negative evaluation was issued despite the fact that other teams and colleagues within Citibank had provided Plaintiff with positive recognition and feedback regarding her work product and contributions.

31. The year-end evaluation contained further discriminatory content specifically targeting Plaintiff's ADA-protected work-from-home accommodations.

32. Specifically, Mr. Sankar wrote: "There was a concern reported about her offline attendance related to Experian Learning sessions, which are external vendor sessions... that included late cancellation and not attending in person."

33. This criticism directly contravened Plaintiff's approved reasonable accommodations, which permitted her to work from home and attend in-office activities only when her medical condition allowed.

34. By penalizing Plaintiff for not attending in-person sessions, Mr. Sankar unlawfully discriminated against her on the basis of her disability and failed to honor her reasonable accommodations.

35. On December 20, 2024, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

## V. RETALIATORY INVESTIGATIONS

13

36. Following Plaintiff's internal ethics complaint and EEOC charge, Defendant initiated a pattern of retaliatory investigations designed to intimidate Plaintiff and manufacture pretexts for termination.

## A. First Retaliatory Investigation

37. Defendant accused Plaintiff of disclosing confidential details of the ethics investigation to other employees.

38. This allegation was never substantiated or proven.

39. Despite the lack of evidence, Human Resources personnel explicitly threatened Plaintiff that if the allegation were confirmed, she would be subject to immediate termination.

40. While Defendant maintains a confidentiality policy regarding internal investigations, the accusation and threat of immediate termination were deployed selectively and in direct response to Plaintiff's protected discrimination complaint. The timing of this investigation—immediately following Plaintiff's ethics complaint against Mr. Sankar—and the severity of the threatened consequence demonstrate that this was a retaliatory tactic designed to intimidate Plaintiff and discourage her from pursuing her legal rights, rather than a routine policy enforcement.

## B. Second Retaliatory Investigation and Threats During Medical Leave

41. In early January 2025, Plaintiff was formally diagnosed with major depressive disorder by her treating physician.

42. Plaintiff notified Defendant that she required medical leave and began the process of obtaining documentation for FMLA and short-term disability leave.

43. While Plaintiff was on personal leave and then when Plaintiff was working for several days awaiting approval of her FMLA request, and while experiencing acute mental health symptoms, an investigator from Defendant contacted her regarding yet another investigation.

44. The investigator informed Plaintiff that she was the subject of an investigation and demanded that she immediately participate in an interview.

14

45. Plaintiff explained that she was preparing to commence medical disability leave due to her serious mental health condition and requested that the investigator provide the allegations in writing so she could respond appropriately.

46. The investigator refused this request.

47. Instead, the investigator threatened Plaintiff that if she did not immediately participate in a Zoom video interview, she would be terminated for violation of company policy.

48. This threat was made with full knowledge of Plaintiff's serious health condition and imminent medical leave.

49. The following day, Plaintiff commenced FMLA and short-term disability leave.

50. By threatening termination while Plaintiff was in acute medical distress and preparing for protected medical leave, Defendant engaged in unlawful interference with Plaintiff's FMLA rights and disability discrimination.

## VI. SECOND FMLA LEAVE

51. From January 28, 2025, through April 29, 2025, Plaintiff was on approved FMLA and short-term disability leave for treatment of her mental health conditions.

52. In February 2025, while Plaintiff was on FMLA leave, Defendant's Ethics Department concluded its investigation into Mr. Sankar's discriminatory conduct—an investigation that Plaintiff had initiated in July 2024.

53. Despite multiple instances of documented evidence, including Mr. Sankar's written performance reviews explicitly penalizing Plaintiff for taking FMLA leave and failing to accommodate her disability, the investigation resulted in no findings against Mr. Sankar and no corrective action.

54. The prolonged delay of seven months to investigate clear written evidence of discrimination, combined with the lack of any remedial action despite documented violations, demonstrates Defendant's deliberate indifference to Plaintiff's civil rights and its tolerance of discriminatory conduct by management.

55. On April 30, 2025, Plaintiff's approved leave concluded, and she was medically cleared to return to work.

56. When Plaintiff attempted to access Defendant's computer systems to resume her duties, she discovered that her account had been locked and disabled.

57. Plaintiff contacted Defendant's technology support department and was informed that her account had been administratively blocked by Human Resources and that only her direct supervisor, Mr. Sankar, possessed the authority to reactivate it.

58. This action prevented Plaintiff from returning to work despite her medical clearance and the conclusion of her approved leave period.

## VII. PRETEXTUAL TERMINATION

56. On May 1, 2025, Plaintiff's first scheduled workday following her return from leave, Plaintiff sent an email from her personal email account to Mr. Sankar inquiring about the status of her system access.

57. Mr. Sankar initiated a Zoom video call with Plaintiff that same day.

58. During this call, Mr. Sankar, with Mr. Huovilainen also present, informed Plaintiff that she was being terminated effective immediately.

59. Mr. Sankar stated that during Plaintiff's medical leave, Defendant had conducted an investigation—the same investigation referenced in paragraphs 43-50 above— and concluded that Plaintiff had committed a policy violation by falsely representing that she held a PhD degree.

60. Mr. Sankar further stated that because Plaintiff had not responded to the investigator's demands during her protected medical leave, the investigation concluded adversely to her.

61. Despite the investigator's threats in January 2025 (described in paragraph 47), Plaintiff received no written notice of the specific allegations, no prior warning of potential termination, no opportunity to respond to the allegations after returning from leave, no access to investigate or gather evidence in her defense, and no documentation regarding the allegations, investigation process, or findings.

16

62. Plaintiff's employment was terminated without notice, without an opportunity to be heard, and without due process.

63. Plaintiff received no severance package or transitional benefits.

## VIII. THE PRETEXT: PLAINTIFF'S ACADEMIC CREDENTIALS

64. The stated reason for Plaintiff's termination—alleged misrepresentation of academic credentials—is demonstrably pretextual and was manufactured as retaliation for Plaintiff's protected activities.

### A. Defendant's Knowledge at Time of Hiring

65. Prior to Plaintiff's hire in August 2022, Defendant conducted an extensive background verification process.

66. As part of this process, Defendant required Plaintiff to provide: a. Documentation of all prior employment, including proof of payment; b. Verification of all academic degrees and program enrollments; and c. Authorization for third-party verification through Yale University.

67. At the time of Plaintiff's hire on August 1, 2022, Plaintiff had not yet completed her PhD program.

68. The PhD program was scheduled for completion in September 2022—one month after Plaintiff's start date.

69. Plaintiff clearly disclosed to Defendant during the application and interview process that she was enrolled in a PhD program but had not yet completed the degree requirements.

70. Plaintiff provided proof of enrollment, not proof of degree completion. No further proof of degree complexion were required to proceed with job responsibilities.

71. Defendant accepted this documentation, verified it through Yale University, and hired Plaintiff with full knowledge of her enrollment status. No further proof of degree completion was required for Plaintiff to proceed with her job responsibilities, nor did Defendant request any such proof during the two and one-half years of her employment.

17

72. The Lead Data Analyst position for which Plaintiff was hired did not require a PhD degree as a mandatory qualification.

## B. Plaintiff's Consistent Representations

73. Throughout her employment, Plaintiff openly discussed with colleagues that she was in the process of completing her PhD dissertation.

74. Plaintiff holds the academic status of "ABD" (All But Dissertation), a recognized designation for doctoral candidates who have completed all program requirements except the dissertation defense.

75. Multiple witnesses can attest that Plaintiff never claimed to have completed her PhD but rather consistently stated that she was working toward completion.

76. In her resume and LinkedIn profile, Plaintiff indicated an anticipated completion date for her degree, reflecting her ongoing student status.

## C. The Investigation Was Retaliatory in Timing and Motive

77. For more than two and one-half years—from August 2022 through December 2024—Defendant raised no questions or concerns regarding Plaintiff's academic credentials.

78. In December 2024, shortly after Plaintiff filed her EEOC charge, Plaintiff observed that Mr. Sankar had viewed her LinkedIn profile multiple times.

79. Upon information and belief, Mr. Sankar scrutinized Plaintiff's LinkedIn profile seeking a basis to terminate her in retaliation for her protected activities.

80. Shortly after Mr. Sankar's review of Plaintiff's LinkedIn profile, the "investigation" into Plaintiff's academic credentials was initiated.

81. The timing of this investigation—occurring immediately after Plaintiff filed an EEOC charge and more than two years after Plaintiff's hire—demonstrates that it was pretextual and retaliatory.

82. Defendant deliberately conducted this "investigation" during Plaintiff's FMLA leave, knowing that Plaintiff was unable to respond due to her serious medical

18

condition.

83. Defendant then used Plaintiff's inability to respond—caused by her protected medical leave—as a further basis for termination.

## IX. IMMEDIATE LOSS OF BENEFITS

84. Upon termination on May 1, 2025, Defendant immediately canceled all of Plaintiff's employment benefits, including health insurance coverage.

85. Plaintiff received no advance notice of the termination of her benefits.

86. As a result of the immediate loss of health insurance, Plaintiff was forced to cancel scheduled medical appointments with treating physicians.

87. Plaintiff's ongoing treatment for her chronic back condition and mental health conditions was abruptly interrupted, causing significant harm to her health and wellbeing.

88. Despite her serious medical needs and the sudden termination of coverage, Defendant offered Plaintiff no severance package, no continuation of benefits, and no transitional assistance.

89. Plaintiff has applied for unemployment benefits and has actively sought new employment.

90. Plaintiff's ability to secure comparable employment has been significantly impaired by the discriminatory termination and loss of professional reputation.

## X. CAUSAL CONNECTION AND RETALIATORY PATTERN

91. The temporal proximity and escalating pattern of adverse actions demonstrate a clear causal connection between Plaintiff's protected activities and Defendant's retaliatory conduct:

a. January 2024: Plaintiff granted ADA accommodations

b. February-March 2024: Plaintiff takes first FMLA leave

c. March 2024: Immediate hostile treatment upon return from leave

d. July 2024: Discriminatory mid-year review explicitly citing FMLA leave

e. Summer 2024: Plaintiff files internal ethics complaint

f. December 2024: Retaliatory year-end review citing ADA accommodations; Plaintiff files EEOC charge

g. December 2024: Mr. Sankar reviews Plaintiff's LinkedIn; "PhD investigation" initiated

h. January 2025: Multiple retaliatory investigations; threats during medical crisis

i. January-April 2025: Plaintiff on second FMLA leave

j. May 1, 2025: Pretextual termination immediately upon attempted return from leave

92. This pattern demonstrates that Defendant's actions were motivated by discriminatory animus and retaliation, not legitimate business reasons.

93. Defendant's proffered reasons for Plaintiff's termination are demonstrably false and were manufactured to conceal the true retaliatory motive.


**SUMMARY**

Plaintiff was a valued employee who performed her duties successfully for nearly two years. Only after she exercised her rights under the ADA and FMLA did Defendant subject her to a campaign of discrimination, harassment, and retaliation that culminated in her pretextual termination. Defendant's conduct violated federal and state law and caused Plaintiff substantial economic harm, severe emotional distress, and damage to her professional reputation and career prospects.

EXHIBIT B

EEOC NOTICE OF RIGHT TO SUE
Issued On: 12/02/2025

21



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Newark Area Office**
283-299 Market St, Suite 1703
Newark, NJ 07102
(862) 338-9410
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/02/2025

**To:** Miss Krystyna Menkova
1845 82nd St Apt B4
BROOKLYN, NY 11214
Charge No: 520-2024-06952

EEOC Representative and email:    GLENDORA YOUNG
INVESTIGATOR
GLENDORA.YOUNG@EEOC.GOV

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2024-06952.

On behalf of the Commission,

GLENDORA YOUNG   Digitally signed by GLENDORA YOUNG
                 Date: 2025.12.02 11:48:57 -05'00'
FOR

John Waldinger
Area Office Director

22

EXHIBIT C

EEOC CHARGE OF DISCRIMINATION
Filed: January 15, 2025
EEOC Case No. 520-2024-06952

23

EEOC No. 520-2024-06952 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 520-2024-06952 |
| New York State Division Of Human Rights | |

Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)*: Miss Krystyna Menkova

Phone No.:     347-680-3518
Year of Birth:     1994
Mailing Address: 1845 82nd St Apt B4
BROOKLYN, NY 11214

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: CITIBANK
No. Employees, Members: 201 - 500 Employees
Phone No.: (813) 604-6076
Mailing Address: 388 GREENWICH ST
NEW YORK, NY 10013, UNITED STATES OF AMERICA
Name:
No. Employees, Members:
Phone No.:
Mailing Address:

DISCRIMINATION BASED ON:

Disability, Race, Retaliation

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 02/01/2024
Latest: 12/19/2024
Continuing Action

THE PARTICULARS ARE:

I, Menkova Krystyna, hereby file this charge against my employer, Citibank. This is a dual claim. The details of my charge are as follows:

Employment and Role:

Since August 2022, I have been employed by Citibank as a Lead Analyst in the modeling department (USPBA), where my primary responsibilities include documentation approvals, modeling, and providing analytical solutions for cards and retail marketing campaigns.

My manager Banik Siddhartha Sankar holds the position of Senior Vice President, I directly report to him.

My director Sami Huovilainen holds the position of Managing Director and my manager Banik Siddhartha Sankar directly reports to him.

EEOC Form 5 (06/24)                                                    Page 1 of 5

24

EEOC No. 520-2024-06952 | FEPA No.

Medical Accommodation and Disability Leave:

In January 2024, I applied for and received approval for special accommodation (ADA accommodations) to work from home through April 2026 due to medical conditions.

In February 2024, I took a short-term disability leave under the Family and Medical Leave Act (FMLA), dated 02/12/24-03/11/24 based on medical conditions.

In September 2024, I took another short-term disability leave under the Family and Medical Leave Act (FMLA), dated 09/23/24- 10/23/24 based on medical conditions.

Post-Leave Retaliation and Discriminatory Behavior:

Before my disability leave I was receiving positive end-year evaluations and recognitions from my manager.

After my return from disability leave in March 2024, my manager, Banik Siddhardha, displayed a drastic change in behavior. He exhibited a hostile attitude, made threats of termination, and personally insulted my professionalism. He also began assigning unreasonable tasks, requiring me to redo work multiple times.

During the mid-year review in July, Banik Siddhardha negatively referenced my approved disability leave by stating in writing:

"During the first half, she has taken time offs without properly planning project transitions, risking the completion of critical deliveries."

This statement unjustly incorporated my protected (FMLA) leave into my performance evaluation and discriminates me .Under The Family and Medical Leave Act of 1993, Sec.105 (2) Prohibited Acts - Discrimination " It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual"

Internal Reporting and Inaction:

I escalated this incident to my Director, Sami Huovilainen, multiple times in both written and verbal forms. However, no action was taken, effectively allowing the discrimination to persist and enabling the continuation of discriminatory practices. Despite having full authority to address and resolve my concerns, no steps were taken, which encouraged my manager Siddhartha Banik to continue with discrimination actions.

Such inaction is an encouragement of discrimination is unlawful under  New York City Human Rights Law, Section 8-107(6): "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so"

The issue was escalated to the Human Resources and Ethics Department, resulting in the initiation of an investigation under the Ethics Department. As of 12/27/2024, the investigation remains ongoing. On December 20th, I reported my concerns for the second time regarding discrimination based on race, disability, unfair treatment, and retaliation to both the Human Resources and Ethics Departments.  Despite being fully aware of the discriminatory actions and the hostile work environment I have faced since July 2024, my employer failed to take any corrective action. This inaction enabled the discriminatory behavior to escalate, culminating in more severe acts of discrimination against me.

Under New York City Human Rights Law, Section 8-107(13)(b)(3) "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employeeThe employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

5) Further Discrimination actions .

In December 2024, I received a negative end-of-year performance evaluation from Banik Siddhardha, despite positive recognition of my achievements by other teams. The results of my performance were evaluated as 4 (4-the worst) across all aspects. Such evaluation leads to further termination based on performance.

Since I filed a complaint with the EEOC and initiated an investigation with the Ethics Department at Citibank, during which my manager, Banik Siddhartha, was informed of the ongoing investigation, I view his actions as retaliation for my legal actions and as continued retaliation related to my disability leave.

Such actions are unlawful under Section 8-107(7) of the New York City Human Rights Law:

" Retaliation shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (ii) filed a complaint... (v) requested a reasonable accommodation"

EEOC No. 520-2024-06952 | FEPA No.

End-Year review included negative evaluation based on my reasonable accommodations of work from home: "There was a concern reported about her attendance related to Experian Learning sessions, which are external vendor sessions that included late cancellation and not attending in person."

This evaluation criterias and criticism disregarded my approved work-from-home accommodation  and further highlights Banik's discriminatory bias.

Such actions are unlawful under Section 8-107(7) of the New York City Human Rights Law and under Section 8-107(15) "In any case where the need for reasonable accommodation is placed in issue, it shall be an affirmative defense that the person aggrieved by the alleged discriminatory practice could not, with reasonable accommodation, satisfy the essential requisites of the job or enjoy the right or rights in question." and under

Americans with Disabilities Act of 1990 42 U.S.C.  12112(b)(3)(A) "...discriminate against a qualified individual on the basis of disability  includes utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability."


6) Disparate Treatment.


Under the same manager Banik Siddhartha, another employee, Nitin Sharma, an Indian man, in June-July 2023 took a similar short term disability leave but was treated favorably. Nitin Sharma received a salary increase after his leave. Additional witnesses within the team confirm this disparity. As a White woman after my disability leave, I received a negative performance evaluation, retaliations and threats of termination.

As a White woman, I am the only non-Asian employee in my team, where my manager is an Indian man and the majority of colleagues are Indian, making the team predominantly Asian. The stark contrast in treatment between myself and my Indian colleagues, particularly Nitin Sharma, serves as clear evidence of racial discrimination.

Which is unlawful under  Section 8-107(1)(a)(3) of the New York City Human Rights Law:  "

For an employer or an employee or agent thereof, because of the actual or perceived age, race, national origin,.. disability ... of any person:  To discriminate against such person in compensation or in terms, conditions or privileges of employment."

Under Title VII of the Civil Rights Act of 196. UNLAWFUL EMPLOYMENT PRACTICES (a)(2) : "It shall be an unlawful employment practice for an employer to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

The hiring patterns under my manager, Siddhartha Banik, indicate a preference for selecting Indian candidates for job offers. Of the six employees who have worked or currently work under my manager, for whom he participated in the hiring process, 67% were of Indian origin. I, as an interview panelist for a job position within the team, observed a strong preference by Siddhartha Banik to hire an Indian candidate over individuals of other national origins. This preference was evident even when the Indian candidate's skills and qualifications were significantly lower than those of other interviewees.

Which is unlawful under  Section 8-107(17)(a)(1) :  " Disparate impact. An unlawful discriminatory practice based upon disparate impact is established when: The commission or a person  demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter"


Currently, I'm working in a hostile work environment and living with the fear of losing my job, due to poor evaluation that is based my disability approved leave and accommodation.

I allege that my employer has subjected and is continuing to subject me to discrimination and I want to pursue remedies from illegal discrimination in connection with my disability and race, in violation of the Americans with Disabilities Act of 1990, as amended, and Title VII of the Civil Rights Act of 1964, as amended.

EEOC No. 520-2024-06952 | FEPA No.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Miss Krystyna Menkova

01/15/2025
_____
Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_____
Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____

Printed Name _____

## CP ENCLOSURE WITH EEOC FORM 5 (06/24)

### PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

28

EXHIBIT D

RELIEF REQUESTED

Plaintiff respectfully requests that this Court enter judgment against Defendant and grant the following relief:

1. Award compensatory damages for:
   • Lost wages, salary, and employment benefits from May 1, 2025, to present and continuing;
   • Damages for the extended period of discrimination, harassment, and retaliation from March 2024 through May 2025;
   • Emotional distress, mental anguish, pain and suffering, and severe harm to mental and physical health;
   • Medical expenses incurred due to immediate loss of health insurance and interruption of medical treatment;
   • Damage to professional reputation and diminished career prospects;

2. Award punitive damages for willful, malicious, and reckless discrimination and retaliation in violation of federal and state law;

3. Award pre-judgment and post-judgment interest as permitted by law;

4. Award costs, expenses, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and other applicable law;

5. Grant such other and further relief as this Court deems just, proper, and equitable.

Total requested relief 410 000$, that aligns with discrimination duration of 15 months and emotional distress caused by termination for 14 months, Total 29 months of compensation based on plaintiff salary (170 000$)